# Exhibit A

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK
-----------------------------------------X
STEADFAST INSURANCE COMPANY,         :
                Plaintiff,                INDEX NO.
                                     :
     -against-
                                     :    **COMPLAINT**
HARVEY WEINSTEIN,
                                     :
                Defendant.
                                     :
-----------------------------------------X

Plaintiff Steadfast Insurance Company ("Steadfast") by its attorneys, Ropers Majeski Kohn & Bentley, P.C., as and for its Complaint against defendant Harvey Weinstein ("Weinstein") allege, upon information and belief, as follows:

### NATURE OF ACTION

1. Steadfast brings this complaint for a declaratory judgment pursuant to New York CPLR § 3001, seeking a declaration that Steadfast has no obligation to provide coverage to Weinstein in connection with an underlying criminal prosecution against Weinstein by the New York County District Attorney's office.

2. In the criminal proceeding, Weinstein has been charged with two counts of rape and one count of criminal sexual act, arising out of two separate incidents, one taking place in 2004 and the second in 2013.

3. Steadfast seeks a declaration that the criminal proceeding is not within the scope of coverage afforded by and does not trigger the insuring agreements of the insurance policy issued by Steadfast under which Weinstein seeks coverage.

4821-4872-1511.4

## PARTIES

4. Plaintiff Steadfast is a Delaware corporation with a principal place of business in Schaumburg, Illinois.

5. Upon information and belief, Weinstein currently resides in New York, New York.

## JURISDICTION AND VENUE

6. Jurisdiction exists over Weinstein pursuant to Section 301 or Section 302(a) of the Civil Practice Law and Rules.

7. Venue is proper in New York County pursuant to Section 503(a) and (c) of the Civil Practice Law and Rules as upon information and belief Weinstein either resides in New York County or resides outside the State of New York.

## THE STEADFAST INSURANCE POLICY

8. Steadfast issued to The Walt Disney Company an Employment Practices Liability Insurance Policy bearing policy number EPL 9052741-11 for the Policy Period of June 30, 2017 to June 30, 2018 (the "Steadfast Policy").

9. The Insuring Clauses of the Steadfast Policy provide as follows:

   I. INSURING CLAUSES

   A. Employment Practices Liability Coverage

   The **Underwriter** shall pay on behalf of the **Insureds** all **Loss** for which the **Insureds** become legally obligated to pay on account of any **Claim** by or on behalf of an **Employee** of the **Company** for a **Wrongful Employment Act** taking place before or during the **Policy Period**, if such **Claim** is first reported during the **Policy Period** or the Extended Reporting Period (if purchased) and pursuant to Subsection VII.A.

B. Third Party Liability Coverage

Third Party Liability is granted only if Limits of Liability are shown in Item 2.B of the Declarations. If the Third Party Liability Coverage is granted, the **Underwriter** shall pay on behalf of the **Insureds** all **Loss** for which the **Insureds** become legally obligated to pay on account of any **Claim** by on or behalf of any natural person or groups of natural persons (other than an **Insured Person**) for a **Wrongful Discrimination Act** taking place before or during the **Policy Period**, if such **Claim** is first made during the **Policy Period** or the Extended Reporting Period (if purchased) and reported to the **Underwriter** pursuant to Subsection VII.A.

10. The Steadfast Policy defines the term "Claim" as follows:

**Claim** means:

1. receipt of a written demand for monetary damages; non-monetary and/or injunctive relief;

2. a civil proceeding commenced by the service of a complaint or similar pleading;

3. an administrative or regulatory proceeding commenced by the **Insured's** receipt of a notice of charges, subpoena, formal investigative order or similar document including, without limitation, an **EEOC Proceeding**;

4. an arbitration or other alternative dispute resolution proceeding commenced by the service of a complaint or similar pleading or document;

5. a criminal investigation or proceeding commenced by receipt of an indictment or complaint or a similar charging document issued outside the United States; or

6. receipt of a written request to toll or waive any statute of limitations applicable to any action;

against any **Insured** for a **Wrongful Act**, including any appeal thereof.

11. The Steadfast Policy defines the term "Insureds" as the "**Company** and the **Insured Persons**."

12. The Steadfast Policy defines the term "Company" as:

> **Company** means, collectively, the **Parent Company** and its **Subsidiaries**, including any such organization as a debtor in possession within the meaning of the United States Bankruptcy Code or any equivalent status under similar law.

13. The term "Parent Company" is defined in the Steadfast Policy as "the organization shown in Item 1 of the Declarations." Item 1 of the Declarations of the Steadfast Policy identifies The Walt Disney Company as the Parent Company.

14. "Subsidiary" is defined in the Steadfast Policy as:

> any entity, included but not limited to:
>
> 1. limited liability company, partnership, joint venture, company or corporation controlled or managed by the **Company**;
>
> 2. any other organization in which more than fifty percent (50%) of the outstanding voting securities or voting rights representing the present right to vote for election of directors is owned or controlled, directly or indirectly, in any combination, by the **Company**; or
>
> 3. any organization chartered, sponsored or operated by the **Company** as a not-for-profit organization;

15. The term "Insured Persons" is defined in the Steadfast Policy as follows:

> 1. any natural person who has been, now is or shall become a duly elected or appointed director or officer, trustee, manager, managing member or member of the board of managers, divisional officers, individual who is a general partners, advisory board member, management committee member or equivalent, of the **Company**;
>
> 2. an **Employee** of the **Company**;

-4-

3. with respect to a **Subsidiary incorporated outside the United States, its** functional equivalent of a duly elected or appointed director or officer, trustee, manager, managing member or member of the board of managers, divisional officers, individual who is a general partner, advisory board member, and management committee member, or an **Employee**;

4. an independent contractor if: (1) the **Company** provides indemnification to such individual in the same manner as its regular **Employees**; or (2) if a court or other adjudicatory body determines that the **Company** would be liable for such individual's **Wrongful Act** in the absence of an agreement to indemnify;

5. individuals who were a duly elected or appointed director or officer of the **Company** and who are now presently serving as a consultant to the **Company** pursuant to the terms of their employment agreement and also being indemnified by the **Company** for such consulting services; and

6. a duly elected or appointed officer of the **Company** while serving in an **Outside Position** and while acting in their respective capacities.

16. The Steadfast Policy defines the term "Employee" as follows:

**Employee**, either in the singular or plural, means any natural person whose labor or service is directed by the **Company** in the ordinary course of its business, including without limitation any person who is or was:

1. employed by the **Company** regardless of whether such person is a past, present, prospective, part-time, temporary, seasonal, contract, or leased employee;

2. a volunteer of the **Company**;

3. an independent contractor of the **Company**; or

4. an applicant for employment with the **Company**.

17. The term "Wrongful Act" is defined in the Steadfast Policy as "a **Wrongful Employment Act** or a **Wrongful Discrimination Act**, or both."

18. The term "Wrongful Employment Act" is defined in the Steadfast Policy as follows:

> **Wrongful Employment Act** means any act, error, omission, misstatement, misleading statement, neglect or breach of duty actually or allegedly committed or attempted by the **Company** or by one or more **Insured Persons** in their capacities as such in connection with any actual or alleged:
>
> 1. breach of any oral, written, express or implied employment contract or quasi-employment contract;
>
> 2. violation of any law or public policy concerning discrimination in employment whether based upon age, race, national origin, religion, sex, pregnancy, sexual preference, sexual orientation, marital status, disability, military status, genetic predisposition or any other protected classifications set forth in any federal, state or local laws or public policy;
>
> 3. employment-related torts including without limitation: misrepresentation, including misrepresentation regarding advancement opportunity or employment benefits; inducement to become or remain an **Employee**; wrongful termination (whether actual or constructive), failure or refusal to hire (including failure to hire as a result of information obtained pursuant to the Fair Credit Reporting Act) or promote; wrongful discipline; wrongful reference, deprivation of a career opportunity, demotion or adverse change in terms, conditions or status of employment; wrongful failure to grant tenure; retaliation for asserting a legal right; workplace harassment (including workplace bullying) or sexual harassment including without limitation offensive, intimidating, coercive or unwelcome conduct, advances, contact or communications; negligent hiring, retention, supervision, training or performance evaluation; failure to adopt adequate workplace or employment policies and procedures;, defamation, invasion of privacy (including disclosure of medical information in violation of the Health Insurance Portability and Accountability Act of 1996 and any amendments thereto, disclosure of credit information in violation of the Fair Credit Reporting Act and unauthorized disclosure or use of background, criminal records or other employment related screening methodology), infliction of emotional distress, false

imprisonment, malicious prosecution, defamation, libel, slander and humiliation; and violations of any statute which restates any of the preceding employment related torts.

**Wrongful Employment Act** includes all of the foregoing even if the actual or alleged acts occurred by way of electronic communication, including, without limitation, by way of a social networking site; but only if such acts were committed by an Insured in such Insured's capacity as such.

19. The term "Wrongful Discrimination Act" is defined in the Steadfast policy as follows:

**Wrongful Discrimination Act** means any act, error, omission, neglect, or breach of duty actually or allegedly committed or attempted by the **Company** or by one or more **Insured Persons** in their capacities as such in connection with any actual or alleged violation of any law or public policy concerning discrimination or harassment whether based upon race, national origin, color, religion, sex, sexual preference, sexual orientation, marital status, age, disability, genetic disposition or any other protected status under federal, state or local law or public policy.

**Wrongful Discrimination Act** includes all of the foregoing even if the actual or alleged acts occurred by way of electronic communication, including, without limitation, by way of a social networking site; but only if such acts were committed by an **Insured** in such **Insured's** capacity as such.

20. The term "Loss" is defined in the Steadfast Policy as follows:

**Loss** means **Employment Event Loss**; the total amount that the **Insureds** become legally obligated to pay on account of each **Claim** and for all **Claims** in each **Policy Period** and the Extended Reporting Period (if purchased), made against them for **Wrongful Acts** for which coverage applies including, but not limited to:

1. compensatory damages (including front pay, back pay and any awarded plaintiff's attorney fees), monetary equitable relief, damages arising from intentional conduct, statutory damages (including liquidated damages awarded under the Age Discrimination in Employment Act, the Family Medical Leave Act or the Equal Pay Act, as amended), and punitive damages (including exemplary and multiplied damages); provided however, that damages arising from

intentional conduct and/or punitive damages shall constitute **Loss** only to the extent that they are insurable under the laws of any state or jurisdiction which has a substantial relationship to the **Insureds**, the **Underwriter**, this policy or the **Claim**, including without limitation any state or jurisdiction: (a) where the damages were awarded or imposed; (b) where any **Wrongful Act** took place that gave rise to such damages; (c) where the **Company** or **Underwriter** is incorporated or resides or has its principle place of business; or (d) where this Policy was issued or became effective. The **Underwriter** and the **Insureds** shall determine in good faith whether such punitive damages are insurable and the **Underwriter** shall not later challenge such determination on the ground of public policy.

2. judgments, including pre-judgment and post-judgment interest;

3. settlements;

4. **Defense Costs**; and

5. the cost of training, re-education, sensitivity or minority development programs which the **Company** is legally obligated to institute by reason of judgment or consent decree (or, where applicable, settlement) or arbitration award for liability on account of a **Claim**.

**Loss** (other than **Defense Costs**) does not include:

a. amounts for which the **Insureds** are absolved from payment by any covenant, agreement or court order;

b. taxes or fines or penalties imposed by law, other than liquidated damages awarded under the Age Discrimination in Employment Act or the Equal Pay Act;

c. costs to comply with any injunctive or other non-monetary relief or any agreement to provide any such relief, including providing reasonable accommodations under the Americans with Disabilities Act or similar law or to any person with a disability

d. compensation earned by the claimant in the course of employment but not paid by the **Company**, including any unpaid salary, overtime, bonus, wages, severance pay, retirement benefits, vacation days or sick days;

  e. medical, insurance or other benefits (or the equivalent value thereof) to which the claimant allegedly was entitled or should have been entitled;

  f. **Stock Based Benefits**;

  g. amounts owing under or assumed by the **Insured** pursuant to any express written contract or agreement with the **Insured**; provided however, this exclusion shall not apply:

   (1) to the extent the **Insured** would be liable for such **Loss** in the absence of such contract or agreement; or

   (2) to amounts owing under or assumed by the **Insured** pursuant to any written contract or agreement of employment if:

    (a) the **Claim** is brought by an **Employee** employed outside of the United States; and

    (b) such contracts or agreements are required by law or are customary in a jurisdiction outside the United States.

  h. matters uninsurable under the law pursuant to which the terms of this policy are construed.

21. The Steadfast Policy defines the term "Defense Costs" as follows:

**Defense Costs** means that part of **Loss** consisting of reasonable costs, charges, fees (including but not limited to attorneys' fees and experts' fees) and expenses (other than regular or overtime wages, salaries or fees of the directors, officers or **Employees** of the **Company**) incurred in defending, settling, appealing or investigating **Claims**, including the appeal from any order and the premium for appeal, attachment or similar bonds.

## THE CRIMINAL PROCEEDING

22. Upon information and belief, on or about May 25, 2018, a criminal felony complaint was filed against Weinstein in the Criminal Court of the City of New York, County of New York (the "Felony Complaint") setting forth the following charges: Rape in the First

Degree, New York Penal Law § 130.35(1); Criminal Sexual Act in the First Degree, New York Penal Law § 130.50(1); and Rape in the Third Degree, New York Penal Law § 130.25(3).

23. Upon information and belief, Weinstein was arrested on May 25, 2018 for the charges set forth in the Felony Complaint.

24. As stated in the felony complaint, the criminal charges filed against Weinstein arise out of two incidents, both taking place in the City and County of New York. The first incident alleged in the Felony Complaint took place in 2004, and the second incident took place in March 2013.

25. Upon information and belief, on or about May 30, 2018, Weinstein was indicted for the charges set forth in the Felony Complaint. (The criminal prosecution arising out of the Felony Complaint and the indictment of Weinstein are collectively referred to as the "Criminal Case.")

## WEINSTEIN'S TENDER OF THE CRIMINAL CASE TO STEADFAST

26. By letter dated May 25, 2018, Weinstein's attorney, on behalf of Weinstein, tendered the Criminal Case to Steadfast for coverage under the Steadfast Policy.

27. On or about June 18, 2018, Steadfast advised Weinstein that Steadfast would pay Defense Costs as defined in the Steadfast Policy on behalf of Weinstein in the Criminal Case subject to a reservation of rights, including the right to deny coverage and to recoup all amounts paid by Steadfast in the event it was determined that no coverage existed under the Steadfast Policy for the Criminal Case.

28. An actual case or controversy exists between the parties as to whether coverage exists under the Steadfast Policy for the Criminal Case.

4821-4872-1511.4

## AS AND FOR A FIRST CAUSE OF ACTION
### (Declaratory Judgment—Insuring Clauses)

29. Steadfast repeats and realleges each and every allegation set forth in paragraphs 1 through 28 hereof as if set forth at length herein.

30. Insuring Clause I.A of the Steadfast Policy provides as follows:

> A. Employment Practices Liability Coverage
>
> The **Underwriter** shall pay on behalf of the **Insureds** all **Loss** for which the **Insureds** become legally obligated to pay on account of any **Claim** by or on behalf of an **Employee** of the **Company** for a **Wrongful Employment Act** taking place before or during the **Policy Period**, if such **Claim** is first reported during the **Policy Period** or the Extended Reporting Period (if purchased) and pursuant to Subsection VII.A.

31. The Criminal Case is not within the scope of Insuring Clause I.A of the Steadfast Policy.

32. Steadfast is entitled to a declaration that no coverage exists under Insuring Clause I.A and that Steadfast has no obligation to pay any Loss incurred by Weinstein in connection with the Criminal Case under Insuring Clause I.A.

33. Insuring Clause I.B of the Steadfast Policy provides as follows:

> B. Third Party Liability Coverage
>
> Third Party Liability is granted only if Limits of Liability are shown in Item 2.B of the Declarations. If the Third Party Liability Coverage is granted, the **Underwriter** shall pay on behalf of the **Insureds** all **Loss** for which the **Insureds** become legally obligated to pay on account of any **Claim** by on or behalf of any natural person or groups of natural persons (other than an **Insured Person**) for a **Wrongful Discrimination Act** taking place before or during the **Policy Period**, if such **Claim** is first made during the **Policy Period** or the Extended Reporting Period (if purchased) and reported to the **Underwriter** pursuant to Subsection VII.A.

34. The Criminal Case is not within the scope of Insuring Clause I.B of the Steadfast Policy.

35. Steadfast is entitled to a declaration that no coverage exists under Insuring Clause I.B and that Steadfast has no obligation to pay any Loss incurred by Weinstein in connection with the Criminal Case under Insuring Clause I.B.

36. As a result of the foregoing, Steadfast is entitled to a declaration that it has no obligation to provide coverage to Weinstein or to pay Loss under the Steadfast Policy in connection with the Criminal Case.

### AS AND FOR A SECOND CAUSE OF ACTION
**(Declaratory Judgment—Exclusion)**

37. Steadfast repeats and realleges each and every allegation set forth in paragraphs 1 through 36 hereof as if set forth at length herein.

38. Section IV., Exclusions, of the Policy provides in part as follows:

    A    The Underwriter shall not be liable for Loss on account of any Claim:

. . .

        3.    for bodily injury (other than employment-related mental anguish, humiliation or emotional distress); sickness; disease; death of any person; or damage to or destruction of any tangible property including the loss of use thereof;

39. The Criminal Case is a Claim for bodily injury.

40. Exclusion A.3 of the Steadfast Policy precludes coverage for the Criminal Case.

41. Steadfast is entitled to a declaration that Steadfast has no obligation to pay any Loss under the Steadfast Policy in connection with the Criminal Case.

## THIRD CAUSE OF ACTION
### (Declaratory Judgment—Bail)

42. Steadfast repeats and realleges each and every allegation set forth in paragraphs 1 through 41 hereof as if set forth at length herein.

43. Upon information and belief, following Weinstein's arrest in connection with the Criminal Case, Weinstein's bail was set at either $10,000,000 bond or $1,000,000 cash.

44. Upon information and belief, following his arrest in connection with the Criminal Case, Weinstein paid $1,000,000 as cash bail to secure his release from jail pending trial.

45. Weinstein has requested that Steadfast reimburse Weinstein under the Steadfast Policy for the amount paid by Weinstein for bail.

46. Steadfast is declining coverage for the bail paid by Weinstein and is advising Weinstein that the cash bail paid by Weinstein is not within the definition of Defense Costs or Loss under the Steadfast Policy.

47. An actual case or controversy exists as to whether the amount paid by Weinstein as bail is within the scope of coverage of the Steadfast Policy and whether Steadfast has an obligation to reimburse Weinstein for the amount Weinstein paid as bail.

48. Steadfast is entitled to a declaration that the amounts paid by Weinstein as bail in connection with the Criminal Case is not within the definition of Defense Costs or Loss under the Steadfast Policy and that Steadfast has no obligation to pay or reimburse Weinstein for such amounts.

## FOURTH CAUSE OF ACTION
### (Declaratory Judgment—Recoupment of Defense Costs)

49. Steadfast repeats and realleges each and every allegation set forth in paragraphs 1 through 48 hereof as if set forth at length herein.

50. Steadfast only has an obligation to pay Loss in connection with a Claim that is covered by the Steadfast Policy.

51. The Criminal Case is not covered under the Steadfast Policy.

52. Steadfast has advanced or will soon advance attorneys' fees and costs incurred by Weinstein in the defense of the Criminal Case under a reservation of rights, including the right to recoup such amounts in the event it was determined that no coverage existed for the Criminal Case.

53. Steadfast is entitled to a declaration that it is entitled to recoup all amounts it has paid on Weinstein's behalf in connection with the Criminal Case.

### FIFTH CAUSE OF ACTION
**(Money Had and Received/Restitution—Recoupment of Defense Costs)**

54. Steadfast repeats and realleges each and every allegation set forth in paragraphs 1 through 53 hereof as if set forth at length herein.

55. Steadfast has paid or will soon pay attorneys' fees and costs on behalf of Weinstein in the defense of the Criminal Case that Steadfast was not obligated to pay.

56. As a result of the foregoing, Steadfast has conferred or will by its payment confer a benefit on Weinstein to which Weinstein was not entitled.

57. Under principles of good conscience and pursuant to the Steadfast Policy, Weinstein should not be permitted to retain the amounts paid by Steadfast in connection with the Criminal Case.

58. Steadfast is entitled to recoup all amounts it paid on Weinstein's behalf in connection with the Criminal Case, in an amount to be proven at the trial of this action.

**WHEREFORE,** Steadfast demands judgment as follows:

4821-4872-1511.4

a. On the First Cause of Action, declaring that the Criminal Case is not within the scope of the Insuring Clauses of the Steadfast Policy and Steadfast has no obligation to provide coverage to Weinstein or to pay Loss under the Steadfast Policy in connection with the Criminal Case;

b. On the Second Cause of Action, declaring that the Criminal Case is excluded from coverage under the Steadfast Policy and Steadfast has no obligation to provide coverage to Weinstein or to pay Loss under the Steadfast Policy in connection with the Criminal Case;

c. On the Third Cause of Action, declaring that the amount paid by Weinstein as bail in connection with the Criminal Case is not Loss or Defense Costs as defined in the Steadfast Policy and Steadfast has no obligation to pay or reimburse Weinstein for such amount;

c. On the Fourth Cause of Action, declaring that Steadfast has a right to recoup all amounts paid by Steadfast on behalf of Weinstein in connection with the Criminal Case;

d. On the Fifth Cause of Action, for recovery of all amounts paid by Steadfast on behalf of Weinstein in connection with the Criminal Case in an amount to be proven at trial; and

e. such other and further relief as this Court may deem just, proper and equitable.

Dated: New York, New York
June 26, 2018

Respectfully submitted,

ROPERS, MAJESKI, KOHN & BENTLEY

By: /s/ Andrew L. Margulis
ANDREW L. MARGULIS
AMBER W. LOCKLEAR
750 Third Avenue, 25th Floor
New York, NY 10017
Tel: (212) 668-5927
andrew.margulis@rmkb.com
amber.locklear@rmkb.com
Attorneys for Plaintiff
Steadfast Insurance Company